IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER PAUL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 14-cv-03259 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| CHICAGO TRANSIT AUTHORITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Chicago Transit Authority ("CTA") fired Plaintiff Christopher Paul, a bus operator who is bipolar. Paul then brought this lawsuit alleging that his firing and related employment actions violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* The CTA has moved to dismiss Paul's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 31.) In particular, the CTA contends that Paul's three ADA claims—failure to accommodate his disability, improper retaliation, and improper interference—all fail and that the exemplary and liquidated damages he seeks are barred by statute. For reasons explained below, the CTA's motion is granted in part and denied in part. Specifically, the Court grants the CTA's motion to dismiss Paul's failure to accommodate claim and his prayer for exemplary and liquidated damages, but denies the CTA's motion to dismiss Paul's improper retaliation and improper interference claims.

## BACKGROUND[1]

Paul was diagnosed with bipolar disorder in 1999. (Am. Compl. ¶ 6, Dkt. No. 29.) The CTA employed him as a part-time bus driver beginning in 2007. (*Id.* ¶ 7.) On multiple occasions

---

[1] For the purposes of the CTA's motion to dismiss, the Court takes the allegations in Paul's Amended Complaint as true and draws all reasonable inferences in Paul's favor. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

during the course of his employment, Paul sought to have a schedule that would allow him a consistent amount of sleep. (*Id.* ¶ 11.) Paul's doctors maintained that consistent sleep would prevent his disease from worsening. (*Id.*)

In 2011, the CTA agreed to schedule Paul's shifts to enable him to have at least 13 hours between the end of one shift and the beginning of the next. (*Id.* ¶ 17.) But the CTA never actually put that accommodation into practice. (*Id.* ¶ 19.) However, the CTA did hire Paul into a full-time position in August 2012. (*Id.* ¶ 24.) Shortly thereafter, the CTA took Paul off duty because of his lithium medication. (*Id.* ¶ 30.) After his doctor wrote to the CTA explaining how his lithium medication was not a concern to his work, especially if he was adequately accommodated, Paul was reinstated to work. (*Id.*) Then, three months later in December 2012, the CTA discharged Paul.

Paul filed a charge with the Illinois Department of Human Rights and United States Equal Employment Opportunity Commission ("EEOC"). This filing charged disability-based discrimination occurring as late as December 11, 2014. (Charge of Discrim., Dkt. No. 1 at 14 of 15.) Paul did not check the box to charge a claim of retaliation or interference, nor did he check the box indicating a continuing action. (*Id.*) The narrative of Paul's EEOC complaint stated as follows:

> I was hired by the Respondent on or about January 1, 2007. My most recent position was Bus Operator. Respondent is aware of my disability. During my employment, I requested a reasonable accommodation, which was not provided. Subsequently, I was disciplined and discharged. I believe I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

(*Id.*) The EEOC issued Paul a right-to-sue letter in February 2014. (EEOC Dismissal and Notice of Rights, Dkt. No. 1 at 15 of 15.) Paul then filed the present suit. The now-operative Amended

Complaint states three counts, each under the ADA: (1) failure to accommodate, (2) retaliation, and (3) interference, coercion, and intimidation.

**DISCUSSION**

A plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555; *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (stating this plausibility requirement "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations" (quoting *Twombly*, 550 U.S. at 556)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not satisfy this standard. *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**I.     Paul's Failure to Accommodate Claim**

To prevail on a claim for failure to accommodate a disability under the ADA, a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) his employer was aware of his disability; and (3) his employer failed to reasonably accommodate his disability. *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 678 (7th Cir. 2005). Paul's claim fails at the first step, for he has not sufficiently pleaded that he is "disabled" for purposes of the ADA.

As relevant here, the ADA defines "disability" to mean "a[n] impairment that substantially limits [at least] one . . . major life activit[y] of [the allegedly disabled] individual . . . ." 42 U.S.C. § 12102(1). The statute directs the Court to interpret this "definition

of disability . . . in favor of broad coverage of individuals . . . to the maximum extent permitted . . . ." 42 U.S.C. § 12102(4)(A). The EEOC regulations that implement the ADA define an "impairment" as "any physiological disorder or condition . . . affecting one or more of the body systems . . . ." *Chicago Reg'l Council of Carpenters v. Thorne Assoc., Inc.*, 893 F. Supp. 2d 952, 960 n.7 (N.D. Ill. 2012) (quoting 34 C.F.R. § 104.3(j)(2)(i)). An emotional or mental illness like bipolar disorder may constitute such an impairment. 29 C.F.R. § 1630.2(h)(2); *see also Roman Martinez v. Potter*, 550 F. Supp. 2d 270, 278 (D.P.R. 2008) (finding that bipolar disorder qualifies as an impairment under the ADA); *Glowacki v. Bufalo Gen. Hosp.*, 2 F. Supp. 2d 346, 251 (W.D.N.Y. 1998) (same).

"However, not all impairments are disabilities for purposes of the ADA." *Krocka v. City of Chicago*, 203 F.3d 507, 512 (7th Cir. 2000). Rather, an impairment is a disability only if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A); *see also Scheerer v. Porter*, 443 F.3d 916, 919 (7th Cir. 2006) (observing that a plaintiff under the ADA "must be able to show that . . . he was either prevented or severely restricted from such major daily tasks, such as walking, eating, sleeping, or sexual reproduction" in order to show substantial limitation (citing *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195–99 (2002))).

Paul attempts to specify a qualifying impairment of a major life activity by referring to his medically-required sleep schedule. (*See* Pl.'s Resp. at 2, Dkt. No. 37.) Importantly, Paul does

4

not claim that his bipolar disorder itself impairs his sleep. Instead, Paul argues that properly managing his bipolar disorder requires that he get uninterrupted sleep, in order to allow for his medication to take full effect.

In so arguing, Paul confuses the required showing. In this case, requiring substantial interrupted sleep is not an *impairment* of a major life activity; rather, Paul's requirement of sleep—and his request that the CTA allow him sufficient time to get that sleep—is the *accommodation* that Paul sought. That accommodation was necessary to avoid the effects of his claimed disability of bipolar disorder. So, to satisfy the ADA's disability requirement, Paul must demonstrate that the effects of his bipolar disorder resulted in the substantial impairment of a major life activity. But Paul has not pleaded what the effects of his bipolar disorder are. Put another way, he has not alleged what the effects would be if he were not to get his required sleep and his bipolar disorder were not properly treated. Paul's Amended Complaint just says that his sought accommodation "prevent[s] him from becoming manic." (Am. Compl. ¶ 11, Dkt. No. 29.) It does not set forth how "becoming manic" affects any of his major life activities, nor does it provide any factual details from which those effects could be inferred—for example, the frequency of such manic episodes, their duration, or their severity.

To be clear, at this stage, the Court does not take a position as to whether Paul's manic episodes do or do not substantially affect any of his major life activities. They very well might. But it is incumbent on Paul to set forth sufficiently detailed facts to plausibly allege that his proffered condition of disability, namely his bipolar disorder, substantially affects one of his major life activities, thereby showing that he is disabled. For this reason, Paul's claim for failure to accommodate must be dismissed again.

## II. Paul's Improper Retaliation and Improper Interference Claims

The ADA prohibits both "discriminat[ion] against any individual because . . . [he] made a charge" under the ADA and also "coerc[ion or] intimidate[ion of], threa[t against], or interfere[nce] with any individual in the exercise or enjoyment of, or on account of his . . . having exercised or enjoyed . . . any right granted or protected by" the ADA. 42 U.S.C. §§ 12203(a), (b). The elements of a retaliation claim under the ADA are: (1) the plaintiff was engaged in protected activity, (2) the retaliator knew that the plaintiff was involved in protected activity, (3) the plaintiff suffered an adverse decision or course of action, and (4) a causal connection between the protected activity and adverse action. *Hale v. Pace*, 2011 WL 1303369, at *6 (N.D. Ill. 2011). To allege a claim of interference under Section 12203(b), a plaintiff must meet the same requirements as necessary to assert a claim for retaliation under Section 12203(a). *See Olian v. Bd. of Educ. of the City of Chicago*, 631 F. Supp. 2d 953, 966 (N.D. Ill. 2009) (stating methods for showing retaliation are appropriate for claims under Section 12203(b))).

Prior to filing suit, a plaintiff asserting a claim under the ADA must exhaust his administrative remedies. "This means that plaintiffs may only bring claims that were included in their charge to the EEOC . . . ." *Dumka v. Johnson*, 2015 WL 9268369, at *3 (N.D. Ill. Dec. 19, 2015). However, a plaintiff may sue on claims "like or reasonably related" to the claims in his EEOC charge—that is, those which share a "factual relationship" and could be expected to grow out of the claims. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994). Exhaustion requires neither "literary exactitude" nor "exact correspondence between the words of an EEOC charge and the judicial complaint." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 865–66 (7th Cir. 1985) (internal citations omitted). As a general rule, court reliance on "technicalities [is] particularly inappropriate in a statutory scheme in which **laymen**, unassisted by trained lawyers,

initiated the process." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (emphasis added) (quoting *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972)). "Instead, courts must liberally construe the administrative proceedings when evaluating whether the claims are reasonably related to the charges in the plaintiff's complaint." *Dumka*, 2015 WL 9268369, at *3 (citing *Cheek*, 31 F.3d at 500). In particular, the box or boxes that a plaintiff "checked on the EEOC form do not necessarily control the scope of a subsequent complaint." *Kristufek v. Hussman Foodservice Co., Toastmaster Div.*, 985 F.2d 364, 368 (7th Cir. 1993). "[C]hecking th[e] box [for retaliation] is not an absolute precondition to exhausting a retaliation claim." *Dumka*, 2015 WL 9268369, at *4. Accordingly, courts have allowed plaintiffs who failed to check the retaliation box on the EEOC charge to maintain retaliation claims nonetheless. *See, e.g.*, *Griffin v. Sutton Ford, Inc.*, 452 F. Supp. 2d 842, 846 (N.D. Ill. 2006).

The CTA argues that Paul failed to exhaust his remedies because his submitted charge to the EEOC shows only one checked box, indicating discrimination, and makes no other mention of retaliation or interference. (Def. Memo. in Supp. Mot. to Dismiss at 6–7, Dkt. No. 32; EEOC Filing, Dkt. No. 1 at 13–15 of 15.) The Court rejects this argument. As discussed, Paul's failure to check boxes indicating retaliation or interference does not dispose of his retaliation and interference claims. The Court must consider the context of Paul's EEOC charge. That charge's narrative, liberally construed, alleges facts to support each element of a retaliation claim: that Paul engaged in a protected activity and that the CTA knew he did ("During my employment, I requested a reasonable accommodation [from the CTA]"); and that, as a result of his engaging in a protected activity, he suffered an adverse action ("Subsequently, I was disciplined and discharged"). (Charge of Discrim., Dkt. No. 1 at 14 of 15.) Moreover, the timeframe of the alleged events is relatively short. Paul alleges that he "submitted a second accommodation

7

request" on August 20, 2012. One month later on September 20, 2012, the CTA denied Paul's transfer to full-time work, after which Paul's doctor sent his last communication to the CTA regarding Paul's condition. The CTA then discharged him less than three months later. (Am. Compl. ¶ 35, Dkt. No. 29.) Given the short timeframe of events referenced by Paul's charge, the allegations in his charge clearly give rise to the inference of a causal connection between those events and, further, put the CTA on notice that Paul considered his discharge to violate the ADA.

The CTA also gestures at an argument that Paul did not engage in any protected activity giving rise to a retaliation or interference claim. But this is pellucidly mistaken. Paul alleges that he requested an accommodation of his disability, and that he was retaliated against and interfered with because of his request. (*See, e.g.*, Am. Compl. ¶ 23, Dkt. No. 29.) Consequently, Paul has done enough at this stage of the proceedings for his claim to proceed. The Court thus rejects the CTA's arguments against Paul's retaliation and interference claims.

### III. Exemplary and Liquidated Damages

Finally, the CTA challenges Paul's request for exemplary damages and liquidated damages. Although the ADA allows for the recovery of exemplary—or punitive—damages in certain circumstances, it also incorporates the sections of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, that immunize municipal corporations from punitive damages. 42 U.S.C. § 12117(a); 42 U.S.C. § 1981a(a)(2). As the CTA is a municipal corporation, it is immune from punitive damages under the ADA. *See Rosado v. CTA*, 2014 WL 237937, at *2 (N.D. Ill. Jan. 22, 2014) (striking request for punitive damages under Title VII against the CTA); *see Blalock v. Ill. Dep't of Human Servs.*, 349 F. Supp. 2d 1093, 1097 (N.D. Ill. 2004). Furthermore, liquidated damages are not available under the ADA. *See Sanders v. Ill. Dep't of Cent. Mgmt. Servs.*, 2012 WL 549591, at *2 (C.D. Ill. Feb. 21, 2012) (citing *Robinson v.*

*Global Marine Drilling Co.*, 101 F.3d 35, 36 (5th Cir. 1996); *Magnussen v. Casey's Marketing Co.*, 787 F.Supp.2d 929, 939 n.3 (N.D. Iowa 2011)). Thus, the Court dismisses Paul's claims for exemplary and liquated damages.

## CONCLUSION

For the foregoing reasons, the CTA's motion to dismiss Paul's Amended Complaint (Dkt. No. 31) is granted in part and denied in part. Specifically, the Court grants the CTA's motion to dismiss Paul's failure to accommodate claim. That dismissal is without prejudice and Paul may seek leave one final time to amend his complaint and rehabilitate his claim, should he be able to do so consistent with Federal Rule of Civil Procedure 11. The Court denies CTA's motion to dismiss Paul's improper retaliation and improper interference claims. Finally, the Court dismisses with prejudice Paul's prayer for exemplary and liquidated damages.

ENTERED:

Dated: March 30, 2017

Andrea R. Wood
United States District Judge