# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER S. PAUL, | ) |
| Plaintiff, | ) |
| | ) No. 14-cv-03259 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| CHICAGO TRANSIT AUTHORITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Christopher Paul's third attempt to state a claim against his former employer, the Chicago Transit Authority ("CTA"), for failure to accommodate his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*. This Court previously dismissed the failure-to-accommodate claim in Paul's First Amended Complaint without prejudice, finding that he had failed to allege adequately that he has a disability within the meaning of the ADA. Paul has attempted to resuscitate his failure-to-accommodate claim by filing a Second Amended Complaint, and the CTA has again moved to dismiss that claim. This time, the CTA argues that the failure-to-accommodate claim is time-barred because the date of the most recent alleged conduct falls outside of the statutory window, which requires that the allegedly unlawful employment practice must have occurred within 300 days of the plaintiff's administrative charge filed with the Equal Employment Opportunity Commission ("EEOC"). For the reasons set forth below, the CTA's motion to dismiss Paul's amended failure-to-accommodate claim is granted and the claim is dismissed with prejudice.

# BACKGROUND

I.  **Factual Background**[1]

This case concerns Paul's efforts to seek accommodations from his employer for his bipolar disorder. Paul claims that flare ups of his disorder impair his ability to think, concentrate, and work, but can be reduced if he adheres to consistent sleep and work schedules. (SAC ¶¶ 6–9, Dkt. No. 70.)

   A.  **First Accommodation Request**

The CTA hired Paul in January 2007 as a part-time Bus Operator. (*Id.* ¶ 11.) On May 25, 2011, Paul submitted a First Accommodation Request ("FAR") requesting a modified work schedule that would allow him to get adequate sleep as required for the medication prescribed to control his bipolar disorder. (*Id.* ¶¶ 15, 17.) After some follow-up communications regarding the request, Paul received a telephone call from the CTA's Benefits Coordinator requesting that Paul report to her office to execute a letter for an approved accommodation request. (*Id.* ¶¶ 18–19.) On August 17, 2011, the parties entered into an agreement regarding the requested accommodation ("FAR Agreement"). (*Id.* ¶ 21.) The duration of the FAR Agreement was one year. (*Id.*)

The CTA did not comply with the agreement, however, and Paul's schedule continued to fluctuate. (*Id.* ¶¶ 23, 25.) Because his schedule did not comply with the FAR Agreement and Paul was required to take his prescription medication at set times of the day, Paul was sometimes late for work or missed work entirely. (*Id.* ¶ 25.) Because of his tardiness and missed work, the CTA placed Paul on probation on June 16, 2012 and informed him that he could be discharged for his next infraction. (*Id.* ¶ 26.) After Paul was placed on probation, the CTA continued to violate the

---

[1] For the purposes of the CTA's motion to dismiss, the Court accepts the allegations in Paul's Second Amended Complaint as true and draws all reasonable inferences in Paul's favor. *See, e.g., Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

FAR Agreement by increasing Paul's scheduled hours and assigning him a fluctuating schedule. (*Id*. ¶ 27.)

### B. Change to Full-Time Bus Operator

On August 3, 2012, the CTA offered Paul a full-time Bus Operator position. (*Id*. ¶ 28.) Paul accepted the position and went to a required physical examination that day. (*Id*.) On August 9, 2012, Paul was pulled out of work and sent for a medical examination relating to his fitness for duty. (*Id*. ¶ 29.) On September 20, 2012, the transfer to the full-time Bus Operator position was denied based on a finding that Paul was "unfit for duty" pending clearance and documentation from a private physician. (*Id*. ¶ 34.) The "Unfit Notification" indicated that Paul took prescription lithium twice a day and that, "[p]er DOT regulations, he cannot take this medication within 6 hours of working or driving." (*Id*. ¶ 34.) The notification further explained that, "[i]f possible, [Paul should] please try to switch to another medication that does not cause drowsiness [or] switch to bedtime dose only, or if that is not possible then clearly state that this is the only medication and dosage that he can be on." (*Id*.) On September 24, 2012, Paul's physician, Dr. Schilling, wrote a response to the notification explaining that Paul had driven for four and a half years while being treated with lithium, that the CTA's general concerns about lithium were not pertinent in Paul's case, and that even if they were pertinent, the concerns could be assuaged by "'providing Mr. Paul with a set schedule that has at least 14 hours between the end of one shift and the start of the next shift.'" (*Id*.) On September 29, 2012, Paul was reinstated to duty pursuant to Dr. Schilling's September 24 letter. (*Id*. ¶ 35.)

### C. Second Accommodation Request

During this same time period, around August 10, 2012, Paul submitted a Second Accommodation Request ("SAR") at the instruction of the CTA. (*Id*. ¶ 30.) The SAR requested a

"consistent schedule" and indicated the reason for the request as "taking medication need adequate sleep" [*sic*]. (*Id.*) In support of the SAR, Paul submitted a letter from Dr. Schilling dated August 9, 2012. (*Id.*) That letter stated:

> Specifically, this letter is to request that [Paul's] work schedule be set up so as to allow him to have consistency in his sleep schedule . . . . Having consistent sleep both in terms of the amount of sleep per night and the time he initially goes to sleep decreases the risk of his illness becoming more active or of his illness worsening.

(*Id.*) On September 28, 2012, the CTA denied Paul's SAR in writing, indicating that its Accommodation Committee had considered the request "for a 'consistent' schedule due to [Paul's] medical condition . . . [and his] request is denied because the information the Committee has received does not support [his] accommodation request." (*Id.* ¶ 33.)

### D. Subsequent Discipline and Termination

On November 23, 2012, when Paul reported to work, a CTA clerk informed Paul that she was overbooked with drivers and he could elect not to work that day. Paul indicated that he would take the offer, clocked out, and left. (*Id.* ¶ 36.) When Paul reported to work the next day, the manager removed Paul from duty and instructed him to see the Transportation Manager II ("TMII") the following week. (*Id.* ¶ 37.) Paul, along with his union representative, attended the meeting with the TMII, and "inform[ed] them all of the foregoing history"—presumably, the history of Paul's employment with the CTA, the CTA's non-compliance with the FAR Agreement and Paul's subsequent infractions, and Paul's SAR and the CTA's denial. (*Id.* ¶ 38.) On December 11, 2012, the CTA discharged Paul in an in-person meeting attended by Paul and his union representative. (*Id.* ¶ 39.)

**II.    Procedural History**

Paul submitted a charge alleging violations of the ADA to the EEOC on August 6, 2013. (*Id*. ¶ 50.) He was given a 90-day right-to-sue letter and he timely filed the instant case on May 5, 2014. On the CTA's motion, the Court dismissed the failure-to-accommodate claim in Count I of Paul's First Amended Complaint without prejudice on the ground that Paul had failed to allege that he had a disability within the meaning of the ADA.[2] At the same time, the Court allowed Paul's ADA claims based on unlawful retaliation and interference to proceed. Paul subsequently filed the SAC in an attempt to revive the failure-to-accommodate claim. Now before the Court is the CTA's motion to dismiss the amended failure-to-accommodate claim.[3]

**DISCUSSION**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). That is, the well-pleaded allegations must "plausibly give rise to an entitlement of relief." *Id*. at 679. To determine plausibility, "the court will ask itself

---

[2] Because the Court found that the elements of Paul's failure-to-accommodate claim were not adequately pleaded in the First Amended Complaint, the Court did not reach the CTA's alternative argument that the claim was barred by the statute of limitations. Indeed, the Court could not have decided whether Paul's failure-to-accommodate claim in the First Amended Complaint due to the lack of adequate substantive allegations. Thus, contrary to Paul's argument in opposition to the CTA's current motion, the fact that the Court declined to reach the timeliness argument in its previous opinion does not indicate that the Court found the claim to be timely.

[3] When he initially failed his SAC, Paul failed to include allegations for Counts II and III, as he mistakenly believed he did not need to re-plead those claims since the Court had already denied the CTA's motion to dismiss them. The current motion to dismiss argues that Counts II and III should be dismissed because they were not re-pleaded in the SAC. (*See* Def.'s Mem. at 6–7, Dkt. No. 67.) But the Court already addressed this issue by granting Paul leave to file a corrected Second Amended Complaint. (June 7, 2017 Order, Dkt. No. 69.) Thus, there is no need to address Counts II and III further.

*could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original). "[T]he plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

The CTA's sole argument for dismissal of the failure-to-accommodate claim in the SAC relies upon the statute of limitations. "Although generally a plaintiff is not required to plead around an affirmative defense, such as a statute of limitations, the district court can dismiss a complaint as untimely if the plaintiff has admitted all the elements of the affirmative defense." *Khan v. United States*, 808 F.3d 1169, 1172 (7th Cir. 2015); *see also Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009) ("[D]ismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness."). In principle, a "motion to dismiss a case for a statute of limitations violation must be treated as a motion for judgment on the pleadings under Rule 12(c)," rather than a motion to dismiss under Rule 12(b)(6). *See Orgone Capital III, LLC v. Daubenspeck*, No. 16-cv-10849, 2017 WL 3087730, at *9 (N.D. Ill. July 20, 2017) (citing *Richards v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir. 2012)). However, a Rule 12(c) motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion and opinions "often use the two interchangeably." *Richards*, 696 F.3d at 637.

A plaintiff in Illinois who wishes to bring an ADA claim in federal court must first file an administrative charge with the EEOC within 300 days of when the allegedly unlawful employment practice occurred. *See* 42 U.S.C. §§ 12117(a), 2000e-5(e)(1); *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001). Alleged discriminatory acts that do not fall within the relevant 300-day period are considered untimely and are precluded from consideration

by the Court. *Koelsch v. Beltone Elec. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995). The parties in this case agree that Paul filed his administrative charge on August 6, 2013 and that the 300-day statutory period therefore began on October 10, 2012. (Def.'s Mem. at 4, Dkt. No. 67; Pl.'s Resp. at 3, Dkt. No. 79.) Thus, for Paul's claim to survive, the CTA's alleged failure to accommodate must have occurred on or after October 10, 2012. The CTA argues that the last date of any alleged failure to accommodate is September 28, 2012, when the CTA denied Paul's SAR in writing, and therefore Paul's failure-to-accommodate claim is time-barred.

In response, Paul first argues that the CTA's denial of the SAR on September 28, 2012 was based solely on Paul's August 12, 2012 SAR submission and did not reference the September 24, 2012 letter from Dr. Schilling, which "made another request to Defendant to accommodate Mr. Paul's Disability." (SAC ¶ 32, Dkt. No. 70.) Paul contends that he was still waiting for a response to the September 24 Schilling letter after the CTA's September 28 SAR denial and beyond October 10, 2012—the start date for Paul's 300-day statutory window. According to Paul, he could not have known for sure until his termination on December 11, 2012 that the CTA had denied the September 24 Schilling request.

Paul compares his situation to that in *Herr v. City of Chicago*, 447 F. Supp. 2d 915 (N.D. Ill. 2006), where the plaintiff submitted multiple accommodation requests accompanied by doctors' letters and the defendant made no response. *Id.* at 919. The *Herr* court held that the plaintiff's failure-to-accommodate claim was not time-barred because the defendant had responded to a previous accommodation request and therefore the plaintiff had no reason to believe that the later request would be fruitless. *Id*. The previous request to which the defendant had responded had been submitted the same way as the outstanding requests—via a request from the plaintiff accompanied by a letter from the plaintiff's doctor. *Id.* at 917. Paul also cites *Tinner*

*v. United Insurance Company of America*, 308 F.3d 697 (7th Cir. 2002), and *Rouse v. Chicago Transit Authority*, No. 13-cv-05260, 2016 WL 5233591 (N.D. Ill. Sept. 21, 2016), to suggest that the continuing violation doctrine saves his claim because it was not clear from the September 28 denial whether the CTA had denied the September 24 Schilling request and thus "pursuant to *Tinner*, this was an employment decision made over time, that made it difficult for [Paul] to determine the actual date of discrimination." (Pl.'s Resp. at 9–10. Dkt. No. 79.)

But Paul's arguments cannot cure the fact that the SAC clearly establishes that the last alleged failure to accommodate occurred on September 28, 2012 (a date outside the statutory period), when the CTA denied Paul's outstanding accommodation request. The SAC establishes that the September 24 Schilling letter was not a new, third request that remained outstanding, as Paul argues, but rather a letter that supported the then-outstanding SAR. Specifically, the allegations in the SAC establish:

- The SAR requested a consistent schedule that included adequate sleep. (SAC ¶ 30, Dkt. No. 70.)

- The accompanying August 9, 2012 letter from Dr. Schilling requested a work schedule that allowed "consistent sleep both in terms of the amount of sleep per night and the time [Paul] initially goes to sleep." (*Id.*)

- Dr. Schilling's September 24 letter in response to the CTA's concerns about Paul's lithium prescription indicated that the CTA's concerns could be assuaged by "'providing Mr. Paul a set schedule that has at least 14 hours between the end of one shift and the start of the next shift.'" (*Id.* ¶ 34.)

- The SAR was "supported by Dr. Schilling's 2012 letters which stated the exact same thing [as Dr. Schilling's 2011 letters that supported the FAR] as far as accommodating Mr. Paul's sleep issues as they applied to his Disability." (*Id.* ¶ 40.)

- Paul followed an established process in his first and second accommodation requests where Paul himself would submit a written accommodation request to the CTA stating the requested accommodation and the reason, while Dr. Schilling would submit letters in support of the request. (*Id.* ¶¶ 15, 17, 30, 40.)

- Paul submitted his SAR at the instruction of the CTA. (*Id.* ¶ 30.)

8

- The CTA denied the SAR on September 28, 2012, four days after the September 24 Schilling letter. (*Id.* ¶ 33.)

- Paul's failure-to-accommodate claim is based on "the CTA's (a) refusal to abide by the FAR Agreement; (b) refusal to grant the SAR; and (c) termination [of] Mr. Paul's employment." (*Id.* ¶ 55.)

The SAC says nothing about a third request for accommodation, a request that differed in substance from the SAR, or a request that remained outstanding after the CTA's denial of the SAR.[4] This case is different from *Herr*, where the defendant made no response to the plaintiff's multiple outstanding requests for accommodation. *See Herr*, 447 F. Supp. 2d at 919. Here, the CTA did respond to the outstanding accommodation request—via a written denial on September 28, 2012.

The Court also is not persuaded that the continuing violation doctrine saves Paul's claim, either because of the September 24 Schilling letter or otherwise.[5] Even assuming that the doctrine

---

[4] If Paul had alleged an additional request to accommodate, which he has not, he would also need to have pleaded the CTA's failure to reasonably accommodate that request, which he has not. In fact, the SAC alleges that after the September 24 letter from Dr. Schilling, the CTA reinstated Paul to duty "pursuant to his doctor's September 24, 2012 letter." (*Id.* ¶¶ 34–35.)

[5] Although not entirely clear, it appears that Paul makes additional arguments that the continuing violation doctrine applies, unrelated to the September 24 Schilling letter. (Pl.'s Resp. at 6–7, Dkt. No. 79 ("Plaintiff in the instant case alleges not a single failure to accommodate by the Defendant, but repeated failures that are inextricably connected. Had Defendant in fact adhered to Plaintiff's original accommodation agreement, or accepted Plaintiff's SAR, Plaintiff would not have been late for or missed work, and would not have been placed on disciplinary probation or ultimately fired.").) To the extent Paul intends to argue that the CTA's alleged failures to abide by the terms of the FAR Agreement constituted a failure to accommodate and that those failures are not time-barred because of their continuing nature, this argument fails because none of the alleged failures to abide by the terms of the FAR Agreement are within the statutory period. *See Tinner*, 308 F.3d at 707 (continuing violation doctrine may apply "where discrete acts of discrimination are part of an ongoing pattern and at least one of the discrete acts occurred within the relevant limitations period"). To the extent Paul argues that the CTA's failure to abide by the FAR Agreement or the denial of the SAR ultimately led to his termination (an event which does fall within the statutory period), this argument also fails. *See Bass v. Joliet Sch. Dist. No. 86*, 746 F.3d 835, 839–40 (7th Cir. 2014) ("If a discrete wrongful act causes continuing harm . . . then the 300-day period runs from the date of that event; it does not restart with each new day the harm is experienced.").

in some instances applies to ADA failure-to-accommodate claims, it is not applicable here.[6] The Seventh Circuit has made clear that "[t]he doctrine applies to claims like sexual harassment, where an individual act cannot be made the subject of a lawsuit when it occurs because its character as a violation did not become clear until it was repeated during the limitations period." *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 240 (7th Cir. 2004); *see also Limestone Ev. Corp. v. Vill. of Lemont, Ill*, 520 F.3d 797, 801 (7th Cir. 2008) (noting that the purpose of the continuing violation doctrine "is to allow a suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought"). The "doctrine is applicable only if it would have been unreasonable to expect the plaintiff to sue before the statute ran on the conduct." *Filipovic v. K & R Exp. Sys., Inc.,* 176 F.3d 390, 396 (7th Cir. 1999) (internal quotation omitted). Discrete, concrete acts that are immediately identifiable may not benefit from the continuing violation doctrine. *Place v. Abbott Labs*, 215 F.3d 803, 808 (7th Cir. 2000); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. [E]ach discrete discriminatory act starts a new clock for filing charges alleging that act . . . .").

In this case, the SAC makes clear that the CTA's denial of Paul's request for an accommodation was a discrete, immediately identifiable act. Paul therefore cannot avoid the fact that the act falls outside the statutory period by arguing that the continuing violation doctrine applies. Paul likens his case to *Rouse*, but in that case the court reasoned that the continuing

---

[6] The CTA suggests that the Seventh Circuit held in *Teague v. Northwest Memorial Hospital*, 492 F. App'x. 680 (7th Cir. 2012), that the continuing violation doctrine does not apply to failure-to-accommodate claims because such claims are discrete adverse employment actions. While *Teague* does so suggest, the Court notes that *Teague* is an unpublished order, and therefore is not precedential. In addition, at least one post-*Teague* decision from this District has applied the doctrine to failure-to-accommodate claims. *See Rouse,* 2016 WL 5233591, at *11. For the sake of this opinion, the Court assumes without deciding that the continuing violation doctrine may apply to failure-to-accommodate claims in some instances.

violation doctrine did not apply where the complaint "pinpoints the exact dates" of the defendant's denials of a plaintiff's accommodation requests and those denials are outside the statutory window. *Rouse*, 2016 WL 5233591, at *9–10. The *Rouse* court went on to hold that the continuing violation doctrine may apply "where the plaintiff alleges that the defendant has acted pursuant to an express discriminatory policy." *Id*. at 10. The SAC makes no such allegation here. The plaintiff in *Rouse* also alleged a series of separate requests for accommodations that were never addressed or denied by the defendant and therefore did not have an identifiable date associated with them, and the court held those to be actionable. *Id.* There are no such allegations here.

Finally, Paul separately argues that the SAC alleges that, at the November 24, 2012 meeting between Paul and the CTA's TMII, Paul explained the entire history of his disability and the CTA's failure to accommodate it, and that Paul therefore presented his requests to the CTA's agent at this time and this event was itself a request for accommodation. This argument also fails. The SAC establishes that at the time of the November 24 meeting, the CTA had already denied Paul's SAR and there were therefore no outstanding accommodation requests. The SAC alleges that at the November 24 meeting, Paul informed the TMII "of the foregoing history," but there is no allegation that Paul made a new request for accommodation at the meeting and certainly nothing to indicate that Paul followed the process previously laid out in the SAC with respect to his first and second accommodation requests.

## CONCLUSION

For the foregoing reasons, the CTA's motion to dismiss Count I of Paul's Second Amended Complaint (Dkt. No. 66) is GRANTED. Count I is dismissed with prejudice.

Dated: March 19, 2018

_____
Andrea R. Wood
United States District Judge